Welcome. It's always a pleasure for me to sit with my two colleagues, Judge Robert Luck and Judge Barbara Lagoa, and we welcome you all here today. We're going to be hearing three cases, and for those of you who are not familiar with the traffic light system that we operate on, you will see the clock will tick down. At the two-minute mark, it will turn yellow, and when it turns red, that means your time has expired, and I'm going to ask you to finish your sentence, but don't just keep going to run through several more points. All right, we're going to get started with our first case, United States of America v. Jeffrey DeRoy Lewis, 23-12457. Mr. Wooldridge, you may proceed when you are ready, and I see that you've reserved five minutes for a rebuttal. Yes, thank you, Your Honor. May it please the Court? My name is Thomas Wooldridge, and I represent Petitioner Jeffrey Lewis. Mr. Lewis's plea was involuntary for three reasons. The first is that the Court misled Mr. Lewis as to the likely consequences of a plea. When it informed him, it had no objection to a plea that it actually found highly objectionable and counter to justice. Second, Mr. Lewis was confused about whether he could be punished for methamphetamine, and the Court did not explain relevant conduct to him at sentencing, or that he could be punished for methamphetamine even though he was only admitting involvement in the marijuana aspect of the conspiracy. And finally... Well, can I ask you a question? Yes, Your Honor. It's unclear to me during the change of plea hearing whether or not Mr. Lewis understood... It's clear to me during the change of plea hearing that he objected to the methamphetamine, that he was only really admitting guilt as to marijuana. But there was always a constant clarification by the District Court judge and by his own counsel about that he knowingly possessed a controlled substance. Yes. And he admitted to that. He did. He did, Your Honor. And so what's important there is that it shows that Mr. Lewis was confused at this hearing. Both he and his attorney objected to him being held responsible for methamphetamine. And instead of slowing down the hearing and explaining relevant conduct and explaining to him what the Court said the first objection, the Court said, oh, we'll get to that in a little while. I just want to make sure you understand the elements. I want to deal with the issue of confusion about meth being part of the sentencing calculation and ask you a few questions about that, okay? Yes, sir. All right. So I want to start by looking at the plea agreement. So this is at docket entry 181-1 at page 3, which states specifically says that the defendant was told, quote, before imposing sentence in this case, the Court will be required to consider among other factors, meaning more than just this, the provisions of the United States sentencing guidelines. He was told that, right? Absolutely. Right. And the sentencing guidelines include relevant conduct, do they not? Absolutely. Okay. Was he also told on page 4 of the plea agreement that, quote, the Court may still consider the conduct underlying dismiss counts in determining relevant conduct under the 3553A? Absolutely. In other words, he was told that the very thing to which you were not pleading guilty to, that which is dismissed, is something that I will consider as part of relevant conduct in calculating your sentence. Right. He was told that. And then the moment after he was told that, he objected to the very thing he was just told. Well, no, this is the plea agreement which he signed. I'm not, we're not, I'll get to the hearing. Don't worry. We're going to talk about the hearing. He also, in the plea agreement, said that he understood that the Government, quote, reserves the right to inform the Court and the Probation Office of all facts and circumstances regarding the defendant in this case. Right? Yes. And he also agreed that there were no agreements between the parties with respect to any sentencing guideline issue other than those specifically listed. Yes, sir. Right. So he understood all of that, and he understood all of that in entering the plea, entering the plea colloquy, right? I don't believe he did understand all of that. No, I believe that was in the plea agreement, but I think his opinion... Didn't he say, didn't he say when asked, I understand the plea agreement, and didn't he sign a document in the plea agreement stating, I understand all provisions of it? Yes, Your Honor, he did say that, but his objections show a lack of understanding. I know, but what we've said is, we allotted to these cases, and what our case law seems to say is that where there is sworn testimony stating these things, we actually take that to mean that they exist, that those are actual facts, because what we can't do is then go back and say, well, you said it, but you didn't really mean it. And if, Your Honor, if that were the only issue in the case, I might take that. Well, that's the biggest issue. The meth issue is the biggest issue. By the way, I didn't get to the plea colloquy. Can I just talk about the plea colloquy for a minute? Yes, sir. Because there, that's a docket entry 245, and I'm talking about page 17. The court asked specifically that, have you spoken with, asked as attorney, sorry, as counsel, have you spoken with your client about the sentencing guidelines, how they work, and how they might apply to this case? And counsel said that yes, that he had. And then he asked the defendant, do you understand that at this stage no one can tell you with certainty how the guidelines are going to apply? And he said he understood. That's right. What are we talking about here? What we're talking about is a judge accepting a plea agreement that he feels is counter to justice while telling that same defendant he had no objection. Okay. So let's talk about that part of it. Yes, Your Honor. Okay. So assume for the moment that it's plain error. I haven't seen anything that would say that that's plain, but let's assume it's plain error. Okay. Or it could be plain error if that were the case. What I read, so here's what happened. The district court says, I've reviewed the plea agreement. I'm not rendering an opinion on this thing right now. I only can know and tell you about sentencing and the recommendations until I see the PSI, right? Exactly. That's not what he said. What he said is, Mr. Lewis, I've reviewed this plea agreement. I have no objection to this plea agreement. How do you plead? And then he said guilty. That was how the court inadvertently misled Mr. Lewis. Well, let me ask you this. I don't see how it's misleading, but let me ask you this. Later on at the sentencing, you bring up this point about where the court said it would be mind-boggling for the government to recommend a concurrent sentence in this case, right? I'm sorry? It would be mind-boggling for the government to recommend a concurrent sentence in this case, correct? Mind-boggling. That was at the sentencing hearing. Right. That's where you're hinging this whole argument on. Yes, Your Honor. So at the change of plea, the judge has to tell the defendant whether it has reviewed the agreement and has an objection. Here, the court said, I've reviewed it, and there's no objection. And then later, with no new information, the court says this plea is counter to justice. How can you say there's no new information? Because the court knew everything at sentencing that it knew at the change of plea. By definition, that is not true. And we know that because the court itself said, I cannot make a final call about any of this until I see the pre-sentence investigation report. Well, if you don't want to deceive the PSI, but that doesn't mean it's the same news. Counsel, in the federal system, the whole reason we wait 60 days between change of plea and sentencing, which is not true in other systems, is because we have a thoroughgoing pre-sentence investigation report for which information is brought to the attention of the court. Yes, Your Honor. But there was no relevant fact. The reason the judge found the plea counter to justice was because it was concurrent. The judge knew that in the beginning. Right. But only because the judge had a full understanding of what the underlying things are. This is a busy district, the northern district of Georgia. There are hundreds of cases. They take hundreds of pleas. A judge does not know at the time of plea all the facts that go into it. But this judge knew the important facts, Your Honor, that this was a concurrent plea to a man that was already serving a life sentence in state court. The judge knew that. Right. But the judge didn't know the nature of the underlying conduct. He didn't know the nature and circumstances of this defendant. He did, Your Honor. There were mental competency hearings. And the facts related to that were in the reports that went to the judge. That's in the appendix that we see here. Right. But he didn't have the facts in the pre-sentence investigation report which showed the nature and circumstances of this defendant, the underlying nature of all the conduct, how he acted in prison. There were a number of facts in the PSI that had not been disclosed prior to that. Sure. There may be some facts. But none of those facts are relevant to why the judge made the decision. Of course. The judge made his decision because he found the concurrent nature of the plea objectionable. In this case. Yes, yes. That's I know. Right. Right. The counsel in this case means that it's relevant in this. In other words, he didn't say every concurrent sentence is always going to be unjust. Of course. Right. What he said was in this case it is because this defendant doesn't deserve, based on the nature and history of his conduct, a concurrent sentence. I find that to be mind boggling. But let's even put that aside for the moment. I still I still have the issues with that. But let's even put that aside. How is it that a judge is is required to reject a plea based on a recommendation that he himself says is not binding on him? You're not. A judge isn't required to object anything. Right. But what a judge is required to do is tell the defendant. So the core concern of Rule 11 is that the defendant understands. How many times, how many times of the plea colloquy did the court tell the defendant I am not bound by any recommendation in this plea? A couple of times. About five? About five. But I counted them. But how many times did the court then tell the defendant he has no objection once? And that's the most important. No, no. He has no counsel. He had no objection to the two parties entering into the agreement. What he said was I am not bound by the recommendations. I have the quote here. Yes. What he said is, I quote, all that is required is I'd be advised of what the agreement says and that I had no objection to it. I did receive a copy. I reviewed it carefully and have no objection to it. And then at sentencing, the same judge with nothing relevantly new says this plea is counter to justice. In 20 years of practice in law, I've never had a district court judge say that a plea was extremely. Counsel didn't, in the same, in the same, in the same page of the transcript you're reading from, didn't he say, but I also want to tell you I am not bound by the recommendations that you've entered into with the government. Absolutely. So then. Your Honor, that assumes that he's being honest. But once he doesn't, the counsel, once he, once he reviews everything and then decides I don't want to follow that recommendation, how is that antithetical or inconsistent with what he said at the plea agreement? Because, because at the plea, the court said I have no objection to this agreement as it stands before me. And the only thing that was in there that was important is the concurrent nature of the sentence. That's what the judge was mad about at the sentencing hearing. He wasn't mad about what Mr. Hayes did earlier. He was mad that it was a concurrent sentence. Counsel, when he said, as to the concurrent sentence, I can't promise you that I'm going to impose it. No, he didn't say that about the concurrent sentence. Absolutely he did, counsel. Counsel, here's what we're going to do. You're out of time, but I want you to go look at the plea colloquy and then come back to me and then tell me what you just said was accurate. Okay. Thank you, Your Honor. Thank you. Thank you. Ms. Webb. Good morning. May it please the Court. Mary Webb on behalf of the United States. I'd like to pick up where you just left off, Your Honor, and say that it's at page 19 of the plea colloquy. In other words, I'm going to read it and you ask me, I'm going to ask you a couple questions about it. Yes, Your Honor. It's at page 19 of the transcript. This is docket entry 245. Yes. In other words, concurrently meaning that it will count at the same time as the State sentence is running. That is another example of recommendation made that I'm not bound to follow. I may decide that you should be sentenced to lower than 169. I may decide that you should be sentenced to higher than 169. I might decide that the sentence you serve, or at least a portion of it, should be consecutive to the State sentence that you are serving. Sitting here today, I have no opinion about these things because, again, I want to wait to see what the pre-sentence report says, and I want to hear from everyone at the sentencing before I make these decisions. Is that, in fact, exactly what happened? That's correct, Your Honor. And that's what, reviewing the record as a whole, which is what this court does when reviewing whether there was a Rule 11 violation. The record shows that the court did exactly what it said it was going to do at the plea colloquy. Your opposing counsel has just told us that every single relevant fact was known at the time the plea was done. Is that true or not true? That is not true. Can you tell me what relevant facts were disclosed after the plea considered the factors that a judge has to consider under the guidelines in running a sentence concurrently or consecutively? Yes, Your Honor. And the district court said at the sentencing hearing as it imposed sentencing, went through the 3553A factors, the facts that were very important to it, which was the criminal history of this defendant and the fact that the defendant had three previous convictions for bringing prohibited substances into prisons. And so when the district court laid out its reasons for the sentence that it imposed, that is what the district court focused on, was the fact that this defendant had this very significant criminal history and had these three previous occasions of bringing substances into the... In other words, after he murdered someone and got life or was involved in a murder and got life, he three separate times imported things into the prison for the purpose of distributing contraband in the prison, including drugs, and got essentially credit time served or concurrent time for all of those things. And so the fourth time it happened, the court said, now that I know all about this, it seems pretty unjust to me to run that sentence concurrently like you have the three times prior. Nothing happened those times, so maybe this time something will happen. That's correct, Your Honor. That is the reasoning that the district court laid out. And as Your Honor was pointing out, that kind of information, the extensive investigation into a criminal history, that is typically not known to the district court before sentencing until... Can I ask a question about the change of plea hearing or when Mr. Lewis wanted to withdraw his plea? Can you talk to me about the objections that Mr. Lewis made during the change of plea hearing that he was not in possession of methamphetamine or that he was not distributing methamphetamine and only was involved with marijuana? Yes, Your Honor. And Mr. Lewis and Mr. Lewis's counsel, both during the change of plea hearing, did state that they objected to meth and were not going to agree that he had brought meth into the prison system. And everyone agreed correctly under this court's precedence that the identity of the controlled substance is not an element of the offense. And so Mr. Lewis was advised of the offense. He objected about the identity of the offense, which is a relevant conduct issue, but not an element of the offense. And so he wasn't required to agree to the identity of the substance in order to enter a knowing and voluntary plea. So if he is only pleading to marijuana, does it create an apprendee problem to then increase his sentence for meth and say that whether we're going to look at relevant conduct or whatnot because the meth carries a higher sentencing? Not in this case, Your Honor, because this is not a mandatory minimum statute. So the statute to which Mr. Lewis pled guilty has a statutory maximum of 20 years in and no mandatory minimum. And so because of that, the element is that he was conspiring to distribute a controlled substance, but the identity, the quantity, the weight of the controlled substance, none of that is an element of this offense because it's a controlled substance without having to identify the controlled substance. And the minimum and mandatories would be the same if he had pled guilty only to meth and not marijuana or if he pled guilty only to marijuana and not meth, right? Would the minimum mandatories be the same no matter which? Zero to 20, you just told us. Yes. That's the same no matter what, right? Yes, Your Honor. His clarification that he only wanted to agree to marijuana, didn't want to agree to meth, again, that goes to relevant conduct in this situation. It doesn't affect the minimum or the maximum, right? That's correct. Did you get an enhancement in the PSI? Well, he... For the meth? I'm sorry, Your Honor. Do you get an enhancement in the PSI for the meth? Not in the precedent's investigation report in this case because the probation officer actually did not recommend it, but at sentencing, yes, Your Honor. So what's interesting here is actually Mr. Lewis had agreed and both parties had agreed to recommend a base offense level of, I believe, 32 in this case because everyone thought that he was going to be a career offender for conspiracy to distribute a controlled substance. After the guilty plea, Dupree came out from this court and so conspiracy was no longer a qualifying offense for the career offender enhancement. So he actually had agreed to a higher base offense level in the plea agreement than he ended up being assessed at the sentencing. With Dupree no longer applicable, the precedent's investigation report based on the materials the probation officer had, the probation officer only assessed him with an undefined, undetermined amount of marijuana and came in at a low number and the government objected and the government proved at sentencing through testimony and exhibits that it was in fact meth. Is there any evidence in the record or any indication in the record that the defendant was in fact told that the meth could have been included as part of the relevant conduct here to increase his guideline calculation? There is in the parts that Your Honor previously pointed to and that in the plea agreement, there are the various statements that the defendant agrees to and signs that he understands the sentencing guidelines will have to be calculated and that he does not, and that no one can determine. Is there another, I agree with you that there are those statements from both the plea colloquy and the guidelines, or the plea agreement also indicate that. But isn't there further indication in the, what we'll call the sealed hearing, the sealed hearing from December 2, 2022, that counsel did specifically tell the defendant that meth could be considered as part of relevant conduct? Yes, Your Honor. Can you point that out to me, please? Yes, Your Honor. There's two things in the sealed hearing that go to Your Honor's question. And I'm looking at page 10 specifically at the bottom. Yes, Your Honor. There is the statement of counsel, I believe is probably what Your Honor is referring to, at the bottom of page 10 in which counsel for defendant says, and they're referring to this marijuana meth distinction, and counsel for defendant says, I think he knew beforehand, but he's claiming that he only found out after his plea that Your Honor still has the authority to sentence him as if he possessed methamphetamine. Right, but at the change of plea hearing, the lawyer on page 15 when the court says, but is he prepared to admit to possession with the intent to distribute methamphetamine, Mr. Byrne, no, Your Honor. That's correct, Your Honor. And the defendant on page 13 said, do you understand that the charge at which you're pleading guilty here today? Yes, but I have nothing to do with methamphetamine. I object to that. I mean, there isn't any voluntarily or knowing admission by the defendant that he possessed that particular drug. There doesn't have to be, Your Honor. You are correct that he's objecting to that. I understand that, but you have an enhancement then. He gets a sentencing enhancement as a result of that based on possession. That this court's precedents are clear, Your Honor, that the defendant only has to be advised that the sentencing guidelines will be calculated and will apply. The defendant does not have to be advised about what the relevant conduct will be. That's in the Mosley case, Your Honor, and is really consistent in this court's precedents. Also, it's not an apprendi issue, right? After Booker, the guidelines are advisory, and so there's no apprendi problem with applying guideline enhancements that the defendant did not admit to or plead guilty to, correct? That's correct, Your Honor, and so just to kind of back up a little, if a defendant objects to something that is relevant conduct under the guidelines, then the process is that the government has to bring forth proof at sentencing to attempt to prove that enhancement. If the government doesn't do it, then the enhancement won't apply. Here, the government brought forth the proof. Mr. Lewis did object to methamphetamine, and the government brought forth proof at sentencing and proved it, and that is all that is required. For a knowing involuntary plea, Mr. Lewis needed to know the elements of the, needed to understand the nature of the charge, and it's clear from the transcript that he did. He needed to understand the statutory maximum and any minimum penalties, and it is clear from the transcript that he did that as well. He did not need to know the relevant conduct. So the main argument your opposing counsel brought to us here today is that the statements about the, from the sentencing about the plea being mind-boggling and unjust, or it being unjust to run it consecutive, and that that meant that the district court never should have accepted the plea to begin with. As I understand it, we're reviewing the acceptance of the plea for plain error because no objection was raised, contemporaneous objection was raised at the time. Do you know of any case at all where we've said that a court must reject a plea that it disagrees with or finds unjust in some way? No, your Honor. In the cases that are... It's discretionary, right? It is discretionary, your Honor, and there's a real difference here between a Rule 11C1A plea and a Rule 11C1B plea. Can you explain that difference? Yes, your Honor, and this plea agreement was both, and so a C1A plea is one in which the government is agreeing to dismiss counts or not bring further charges as a result of the plea, and a C1B plea is one in which the government is making a non-binding sentencing or sentencing guidelines recommendation to the district court. Either of those are binding on the district court, other than the dismissals up to the government, the court has nothing to do with it. Well, in fact, your Honor, under C1A, for C1A pleas, the court is required to tell the parties before accepting the plea whether it approves of that portion. Because under Rule 48A, the court has to grant leave to dismiss, right? Correct, your Honor. And so under Rule 11, this is all in Rule 11, the court for a C1A plea has to review and inform everyone if it's going to accept, reject, or defer that portion of the plea agreement. And so the court's statement here that it had no problem with the plea agreement should really be read as a reference to the court fulfilling the duty it had under C1A. And in fact, the court did not go back on that, did not say, I want there to be more charges so I can go higher than 20 years. And that's the context of cases like Bean. There are C1A pleas, what we would now think of as C1A pleas, because the government's dismissing counts and the total statutory maximum is being lowered, and so the court's discretion is going to be hampered by that because the court will have a limit on the number of years. For C1B, all the court has to do, I mean, it has to fulfill the Rule 11 colloquy to make sure it's knowing and voluntary, but the court just has to make sure the defendant understands that it's not binding on the court. And the court did that here and actually did it in detail on what are the provisions that are really at issue here, both about the guidelines recommendation and about the total sentence recommendation and the concurrent recommendation. The court covered those specifically and said they are not going to be binding and I can't tell you what I'm going to do about them. And so because of that, there is no error in the Rule 11 colloquy. And back to Your Honor's question, there is no authority that the government is aware of that would say that the court was required to reject the plea agreement in this situation. And so are there any further questions from the court? So based on the record below and for the reasons set forth in the government's brief, we ask that the court affirm the conviction and sentence. Thank you. Thank you. Mr. Wooldridge, you have five minutes left. Thank you, Your Honor. Judge Lockyer, you were right about that quotation. I appreciate you pointing that out to me. There's something we haven't talked about yet, and that is the overall aspect of what a change of plea hearing is. When you walk into a change of plea hearing, the judge isn't designed to just read off a list of things that Rule 11 requires. The judge has to judge. And the court's precedent has been clear that most of the time if you go down and you just check off everything you're supposed to do in a Rule 11 hearing, that's good enough. But sometimes it's not good enough. In this case, he had a defendant who had two prior mental competency hearings. And though he was found competent to stand trial, those competency reports show a man that's on antidepressants who's not well in many ways. But I thought the court did as good of a job as can be done. You know, we're not mental health counselors, but the court here said, all right, tell me what medic—I know this. Tell me what medications you're on. Judge, I'm on these two. Okay, I'm going to go through each of them. Is this one affecting your understanding? He did. He did, Your Honor. I agree. And so that by itself isn't enough, right? I agree that if I just brought you mental competency, voluntariness, that's not enough. But what that does is it's kind of a red flag. Mr. Lewis was looking around strangely. He was behaving weird at the change of plea hearing. And so that's the first thing. You have a man— I'm not sure I agree with that characterization. The judge even noted—again, you've got to credit the district judge here. So he saw him looking around, and he put it on the record. And he said, why are you looking around, sir? And he actually gave a very good reason. I thought my—if he said family member or someone I know would be in the audience. In other words, he was looking to make sure his mom or his brother was there. Perhaps, Your Honor. And also— That's what he said. I mean, he's under oath. He was, yes. And earlier, though, the judge said—the judge said, the reason I'm asking you this is because you're behaving strange today. He was actually in the transcript where the judge says you're behaving weird. And so the judge went a little further and asked him, why is he looking around? So there was an acknowledgment of the court that you have a man with— I know. But I guess the point of that, or the conclusion that I draw from that is that, to start off where you are, the judge didn't just tick off Rule 11 here. The judge actually seemed to really care about his role and try to make sure that he was doing the right thing in accepting the plea here. So that's—I understand that's your assessment. I disagree with that. I think the judge should have went a lot further. For example, when the issues with methamphetamine arose, you have a defendant objecting to something that everybody in that courtroom knows is not important for that hearing. You don't object to methamphetamine because it's not an issue at the change-of-plea hearing. But this defendant, misinformed, thought this was very, very important that he put these objections on the record and that the court know that he's not trying to be held responsible for methamphetamine. And the court, when you're dealing with somebody that has mental health issues, that's behaving a little strange in a hearing, that there's been two competent hearings about, the court should have slowed it down a little and said, well, let me explain to you relevant conduct. And then the defendant would know what he was facing. And by the way, that same defendant, twice after he learned he could be held accountable for methamphetamine, tried to withdraw that plea, right? So that was very important to him. And then the third thing is you have the judge saying, I have no objection to a plea that he actually found highly objectionable. So you have three. How do you respond, though, to the government's argument? And it's a compelling one that there were duties for which the judge needed to say, I don't object. But there were also parts of this for which he did not need to accept inherently. And he actually did separate those two things out by going through each of the individual and stating, I want you to understand, I'm not bound by these parts of the plea agreement. No, I think it was interesting, the phrasing that Judge Greenberg used that day. I don't think Judge Greenberg had to say whether he objected to all the components of the plea or not. I think if the court had just said, these are the maximums, these are the minimums, this is it, and then at sentencing said, hey, I'm going to run this case. You don't agree with the government's assessment under 11C1A that that kind of plea actually does, in fact, need to be accepted by the district court because it involves dismissal of counts? No, I agree with that. Under the rule, yes, you have to, but that wasn't a very important part of this hearing. So the defendant, it was a four-count indictment. Well, for that, I think we can all agree. It wasn't an important part of the hearing. The second part of the count, it's not very relevant today. I don't, the thing that Judge Greenberg was upset about, the only thing that was upsetting him was that you have a defendant who's getting another concurrent sentence. All of those factors were known at the change of plea hearing. There was nothing that he was upset about at sentencing that wasn't known at change of he. So when that judge said, I have no objection, that judge wasn't exactly right on that. The judge had a huge objection to this plea agreement, and the defendant didn't know that until after the court already accepted it. And then he tried to withdraw the plea that the court found counter to justice. Why in the world wouldn't the court let him out of this awful, awful plea? Instead, he got forced to swallow it, and now will likely never leave a jail cell. So with that in mind, Your Honor, I'd ask you to reverse and remand for a, remand the case back to the district court. Thank you all very much. Thank you. And I know that you were serving as court-appointed counsel, so thank you for your service. Thank you both. We have the case under advisement. You're welcome, Your Honor. Thank you. Thank you. Our second case.